Lee, J.
On the 22d of February 1830 the general assembly passed an act entitled “ An act to authorize the construction of a turnpike road from Joseph Gaunt’s to Price’s mountain in the county of Botetourt,” by which commissioners were appointed to locate said road and to contract for its construction at a grade in no part to exceed five degrees, in the manner and upon the terms prescribed in the .act. The third section of the act provided that to indemnify and compensate the contractor on said work, he should be authorized on *46 the fulfillment of his contract, to erect a gate on the said road, and to demand and receive tolls for the use ■ of the same at a certain rate thereby prescribed ; with a proviso that the rights and privileges thereby granted should terminate from and after the expiration of nineteen years from the erection of the gate or receiving tolls on said road.
On the 1st of March 1831 an act passed amendatory of the above mentioned act, by which the commissioners were authorized to contract for the construction of the road over Caldwell’s mountain, (a part of the line of the contemplated work,) at a grade of six instead of five degrees, as prescribed by the former act. And it provided that when the same should be completed and received by the said commissioners, they should be authorized to empower the undertaker to erect a toll-gate thereon at such place as they might designate, and demand and receive one-half of the rate of tolls allowed by the act of the 22d of February 1830. It also gave them power to extend the said road from Gaunt’s to a point one-half mile east of the house lately the residence of James Davis, and to contract for bridges over Craig’s and Barber’s creeks: And provided • that when the entire work should be completed, the commissioners should be empowered to authorize the contractor to erect two toll-gates on the said line of road, at such points as they might designate, and thereafter at each to demand and receive, in lieu of the tolls authorized by the act of 1830, tolls at a different rate prescribed by the act, being an increase taking the two gates authorized by that act together upon the rates authorized for a single gate by the act of 1830. But if the commissioners should deem the tolls authorized by that act an inadequate compensation to the undertaker of the work, they were required to dispense with the bridging of Barber’s and Craig’s creeks: And moreover it was provided that if in the progress of the *47 work, suck a portion of it should he completed as in the opinion of the commissioners ought in justice to the contractor to entitle him to indemnity before the ■ whole should be finished, they were authorized under the control of the Board of public works to increase the half tolls thereby allowed, to full tolls.
Under the provisions of these two acts the commissioners on the 30th of June 1831 entered into a contract of that date with Jacob Price for the construction of said road from its western terminus to a point one-half mile east of the late residence of James Davis, according to certain specifications embraced in the contract; and the said Price also stipulated that if the legislature should before the completion of said line of road pass an act authorizing its extension from its eastern terminus to Fincastle, he would construct that portion of road also, as a part of the whole line and to be taken and considered as embraced in the indemnity provided by the act of 1st March 1831, without further compensation : or in the event of his failure to undertake the making of that addition to the road, the commissioners reserved the right to contract with others for the construction and make,, provision out of the tolls for their compensation. It was further provided that nothing contained in the contract was to be construed as dispensing with the two bridges mentioned in the act, but that it was understood that the said Price was to build them whenever required by the said commissioners, as part of the consideration he was to receive in the form of tolls from the road.
The extension to Fincastle contemplated in the contract was provided for by an act passed February 8, 1832, entitled “ An act conferring certain powers on the commissioners of the road from Fincastle to Price’s mountain,” which authorized the commissioners to require the contractor to make it upon the same terms and conditions and for the same compensation provided by the act of the 1st of March 1831.
*48 It appears that in the progress of the work, and after that portion of the road over Caldwell’s mountaifi. had been completed, the contractor Price obtained from the commissioners leave to erect a toll-gate thereon and to charge half tolls for the travel over that finished portion of road, under and by virtue of the provision to that effect contained in the act of the 1st of March 1831. When this gate was erected does not precisely appear, but it was more than nineteen years before the filing of the bill in this cause.
On the 1st of August 1834 the entire line of road was received by the commissioners as completed in conformity to the contract, and by virtue of the authority given them by the act of 1831, they thereupon authorized the said Price to erect another toll-gate on the line of said road at or near its western terminus ; and thereafter he received the full tolls authorized by the act of March 1st, 1831, at both the said gates.
Price subsequently departed this life, and the complainant in this cause qualified as his administrator: And after the expiration of nineteen years from the erection of the first gate, (that upon the portion of road across Caldwell’s mountain,) at which half tolls were charged, a doubt having arisen whether the right to receive any tolls at that gate had not ceased, he filed this bill in the Circuit court of Botetourt, praying the aid and instruction of the court upon that point, and also in regard to other difficulties which he alleged had arisen touching the administration of the estate. The distributees of Jacob Price, deceased, were made parties defendants. And subsequently the cause coming on to be heard by consent of parties upon the question of the right to collect tolls on said road, the court was of opinion that the right to collect tolls at each gate ceased at the end of nineteen years from its erection: And as it appeared the first gate, that on the Caldwell’s mountain section at which half tolls had been charged during *49 the progress of the work, had been erected more than nineteen years previously, the court by its decree held that the right to take tolls at that gate had ceased: and directed that the complainant should thereafter demand and receive tolls at the other gate only, until the 1st of August 1853, when the right to demand tolls at it also would expire. And to this decree an appeal has been allowed from this court.
The question thus presented for the adjudication of the court is, whether the term of nineteen years for which the contractor was entitled to demand and receive tolls at the gate first erected upon that portion of the road over Caldwell’s mountain is to be computed as commencing from the time at which it was placed thereon for the purpose of collecting half tolls authorized by the act of 1831, during the progress and until the completion of the whole work, or whether that period is to be considered as commencing on the 1st of August 1834 when the whole work was declared completed and taken oif the hands of the contractor by the commissioners, and when they authorized him to erect a second gate under the provisions of that act, continuing also the one first erected. And this question depends for its solution upon the proper construction of the several acts above referred to taken together as a whole. It is true neither the act of 1831 nor that of 1832 contains any limitation of the term for which the right to take tolls upon the road is to continue. But it cannot be doubted that the limitation of nineteen years contained in the act of 1830 is preserved by the sixth section of the act of 1831 and equally applies to the two gates authorized by that act to be erected as to the single gate provided for by the act of 1830.
The original act of 1830 for the construction of this improvement provided for a road with a grade not to exceed five degrees : And it authorized the erection of but a single gate for the collection of tolls for the whole *50 road; and it was not to be erected until tbe work should be fully completed. No contract was made by tbe commissioners for tbe construction of tbe road under tbe provisions of this act until after tbe passage of tbe amendatory act of tbe 1st of March 1831. Tbe object and purpose of this last mentioned act would seem to be tbe better to promote the success of tbe enterprise by bolding out stronger inducements to contractors to undertake tbe work than those offered by tbe first: for although it authorized tbe commissioners to extend tbe work to a point eastward of its original terminus, and to require bridges across tbe two creeks named, yet it authorized tbe road to be made over Caldwell’s mountain at a grade of six degrees instead of five, as required by tbe first, and when tbe road should be completed over that mountain it authorized a gate to be erected and tolls to be demanded at half tbe rate authorized by tbe act of 1830. And upon tbe completion of tbe whole work it authorized tbe erection of two gates instead of one, at each of which tolls were to be paid at a rate prescribed differing from that of tbe former act, but taking tbe two together for the whole road, considerably improved and affording a better compensation to tbe contractor. And for tbe purpose of securing an adequate compensation to tbe contractor, it required tbe commissioners to dispense with tbe two bridges contemplated if they should-deem tbe compensation otherwise inadequate. And moreover if in their opinion during the progress of tbe work, justice to tbe contractor required it, they were empowered under tbe control of tbe Board of public works „to increase tbe half tolls thereby allowed to full tolls. All these various provisions would seem to evince a disposition on tbe part of tbe legislature to improve upon tbe inducement held out in tbe first act to contractors to undertake tbe work. Tbe chancellor in bis opinion embodied in tbe decree states that this act was for tbe *51 benefit of tbe contractor, but he considered that benefit to consist only in this, that he was thereby enabled to receive compensation for the work finished, and not required as by the original act, to wait until the whole road was completed before he received any tolls. But it may be questioned whether there was any advantage in this to the contractor, if his term of nineteen years as to the gate first erected commenced when he began to collect the half tolls : because those half tolls were not half the whole tolls allowed for the entire work by the act of 1831, but only of the rates allowed by the act of 1830. And thus for those years during the progress of the work in which he was receiving only half the rates provided by the act of 1830, he was receiving less than half of the tolls authorized by the act of 1831, and less than those authorized at either of the gates after the completion of the work; and yet according to this view, those years are part of and to be deducted from the term for which he was to be entitled to collect tolls at that gate. The only compensation for this loss is that he was enabled to receive the half tolls somewhat in advance of the time when he was to receive full tolls at both gates; but this may have been quite inadequate.
By the act of 1831 some additional work is provided to be done not required by the act of 1830 : And as it was thereby contemplated that that portion of the road over Caldwell’s mountain should be first constructed, it might not have seemed unreasonable that during the progress of the work and until it should be fully completed, some compensation should be made to the contractor for the travel over that finished portion in the form of the half rates thereby temporarily allowed.
It is clear from the provisions of these acts that the tolls allowed to be collected by the contractor were intended as compensation not only for the construction of the work but also for keeping it in repair-. The duty to keep in repair continues as long as the correlative *52 right to demand tolls, but no longer. Now though the act of 1831 expressly authorizes two several gates to be erected on the road at convenient points, it recognizes no division of the line of the road into sections with reference to these two gates, nor does it attach any portion of its length to either. If then the right to demand tolls at the gate first erected has expired, there is a portion of the road which the contractor is no longer bound to keep in repair. But how is this portion to be ascertained ? Some portions of the road may require much greater labor and expense to keep them in repair than others; and the difficulty is further increased by the fact that the gate which the decree discontinues is that erected on the portion of road over Caldwell’s mountain for the purpose of collecting half tolls for the use of that portion during the progress and until the completion of the whole work; and the road was to be extended both eastwardly and westwardly from the termini of that mountain section. The difficulties and great inconvenience which the construction given to these acts by the chancellor would necessarily involve would seem to create strong doubts of its correctness; and as the acts themselves make no provision by which they can be avoided, it may not be unreasonable to infer that the legislature did not contemplate any such state of things, but intended that the whole road should be kept up alike for the full term of nineteen years commencing and ending at the same time; and consequently that the right to take the full tolls authorized by the act of 1831 should continue for the whole road for the like period.
The act of 1830 authorized full tolls at the rates therein prescribed for the allotted term commencing on the completion of the entire work thereby contemplated. The act of 1831 authorized like full tolls to be collected at each of two gates according to a modified tariff which *53 it prescribed, when the entire work should be completed : And it seems to me that the computation of the term for which the right to demand full tolls at each gate, should commence at that period and continue from the time it was taken off of the hands of the contractor by the commissioners for the full term provided by the act of 1830. And I do not think that the provision in the act of 1831 authorizing the collection temporarily of half tolls made under the circumstances and with the views which it would seem probable led to its introduction, was intended to control or modify the right to full tolls at each gate for the full term prescribed; but was designed to be an additional remuneration to the contractor offering a further inducement to engage in the work.
I am of opinion therefore that the court below erred in directing the discontinuance of the first gate erected and the collection of tolls at the other only; and that the decree should be reversed.
The other judges concurred in the opinion of Lee, J.
Decree reversed.